IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**March 25, 2024**
C. CASEY FORBES, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**DONALD B. HUFFMAN**
**Claimant Below, Petitioner**

**v.) No. 23-ICA-111**  (WorkForce Bd. of Review Case No. R-2021-4873)

**WORKFORCE WEST VIRGINIA,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Donald B. Huffman appeals the WorkForce West Virginia Board of Review's ("Board") January 24, 2023, decision. Respondent Workforce West Virginia ("Workforce") filed a response.[1] Mr. Huffman did not file a reply. The issue on appeal is whether the Board erred in affirming the decision of the Workforce administrative law judge ("ALJ"), which found that Mr. Huffman was ineligible for Pandemic Unemployment Assistance ("PUA") benefits and that he must reimburse WorkForce for the PUA benefits received.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is some error in the Board's decision. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure for reversal in a memorandum decision. For the reasons set forth below, the decision of the Board is affirmed in part, and reversed and remanded in part for further proceedings consistent with this decision.

Mr. Huffman's last reported date of employment was January 8, 2019, when he was laid off by his employer, MDM Solutions, LLC. After this date, Mr. Huffman remained unemployed. Mr. Huffman was looking for work both before and during the pandemic.

Mr. Huffman filed an unemployment compensation claim seeking PUA benefits on May 11, 2020. When Mr. Huffman filed his application for benefits, he accurately responded "no" when asked whether he had worked between January 1, 2019, and December 31, 2019. Nevertheless, he indicated on this application that he was unemployed because of the COVID-19 pandemic. As a result of Mr. Huffman's application, he was approved for PUA benefits in the amount of $158.00 per week for the weeks between

---

[1] Mr. Huffman is self-represented. WorkForce is represented by Kimberly A. Levy, Esq.

1

February 8, 2020, and September 19, 2020. Mr. Huffman also received seventeen weeks of Federal Pandemic Unemployment Compensation ("FPUC") funds for the weeks ending April 4, 2020, to July 25, 2020. In addition, Mr. Huffman received $400.00 per week in Lost Wages Assistance for the weeks ending August 1, 2020, to September 5, 2020.

Over a year after he stopped receiving benefits, Mr. Huffman's claim was reviewed by WorkForce. On September 24, 2021, a WorkForce deputy's decision held that Mr. Huffman was disqualified from the receipt of PUA benefits, as he had been unemployed since January 8, 2019, and his unemployment was not a result of the pandemic. The deputy held that Mr. Huffman was disqualified from receiving PUA benefits from February 2, 2020, to June 19, 2021. Further, the deputy found that Mr. Huffman did not provide documentation of how he was directly affected by the COVID-19 pandemic, or proof of his identification and residency. WorkForce also sent Mr. Huffman several letters, dated September 24, 2021, which indicated that he was overpaid benefits in the amounts of $10,200.00, $5,812.00, $5,214.00, and $2,400.00, and that these balances totaling $23, 626 needed to be repaid.

Mr. Huffman appealed the September 24, 2021, deputy's decision to the Board. A hearing was held before the Board's ALJ on September 27, 2022. Both Mr. Huffman and a witness for WorkForce testified at the hearing. Mr. Huffman asserted that he had not been employed since January 2019, when he worked for MDM Solutions, LLC doing land work. Mr. Huffman testified that he had previously received unemployment benefits in Pennsylvania until October 2019, prior to applying for benefits in West Virginia. Further, he stated that he had provided truthful and accurate responses on his application for benefits. Mr. Huffman could not recall whether he had applied for PUA benefits in West Virginia, and stated that he did not receive the $5,214.00, $5,812.00, or $10,200.00 in benefits as indicated by WorkForce's overpayment notices. Mr. Huffman did not deny that he received the $2,400.00 in PUA benefits.

The ALJ held that Mr. Huffman was ineligible for PUA benefits, as he had not worked since January 2019 and was thus not a covered individual under the CARES Act.[2] As to the overpayments, the ALJ further found that Mr. Huffman had not provided any evidence other than his testimony that he did not receive the benefits awarded to him. The ALJ determined that Mr. Huffman owed four overpayments of $10,200, $5,812, $5,214, and $2,400. Based on the foregoing, the ALJ affirmed the deputy's decision.

Mr. Huffman appealed the ALJ's decision to the Board on November 30, 2022. The Board affirmed the decision of the ALJ in its entirety in a decision dated January 24, 2023. It is from this decision that Mr. Huffman now appeals.

_____

[2] The CARES Act is congressional legislation passed during the COVID-19 pandemic, which included appropriations for states to fund PUA benefits.

2

In appeals from the Board, our standard of review is as follows:

> The findings of fact of the Board of Review of [WorkForce West Virginia] are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the court is *de novo*.

*Taylor v. Workforce W. Va.*, 249 W. Va. 381, __, 895 S.E.2d 236, 241 (Ct. App. 2023) (alteration in original) (quoting Syl. Pt. 3, *Adkins v. Gatson*, 192 W.Va. 561, 563, 453 S.E.2d 395, 397 (1994)).

On appeal, Mr. Huffman asserts a single assignment of error and argues that he did not receive the entirety of the unemployment benefits that WorkForce indicated. He also argues that the funds that he received would only amount to an overpayment of $2,400.

In response, WorkForce argues that Mr. Huffman was ineligible for unemployment benefits because he was unemployed from January 18, 2019, prior to the start of the pandemic, and was therefore not a "covered individual" under the CARES Act. WorkForce asserts that Mr. Huffman received $158 per week from the weeks ending February 8, 2020, to September 19, 2020, as well as $600 per week in PUA funds from the weeks ending April 4, 2020, to July 25, 2020, which were deposited onto a debit card that was given to Mr. Huffman and should be collected as overpayments.

Turning to the issue of Mr. Huffman's initial eligibility for PUA benefits, the record establishes that Mr. Huffman was separated from work on January 8, 2019, prior to the start of the COVID-19 pandemic. Further, Mr. Huffman did not have any other job offers that were impacted by the COVID-19 pandemic. The CARES Act § 2102, 15 U.S.C. § 9021(a)(3) provides for payment of PUA benefits to "covered individuals," who must self-certify that they were able and available to work, except that the individual was unemployed, partially unemployed, or unable to work due to their place of employment being closed by COVID-19. An individual can also be a "covered individual" under the CARES Act if the individual was scheduled to begin work and does not have a job or was unable to reach a job as a direct result of COVID-19. *See id*. Thus, we find that the Board did not err in affirming the ALJ's finding that Mr. Huffman was ineligible for PUA benefits because he was not a covered individual under the CARES Act.

Next, we turn to Mr. Huffman's assignment of error in which he argues that he did not receive all of the funds that WorkForce determined he owes as overpayments. Upon our review of the record, it appears that there are some inconsistencies as to whether Mr. Huffman received the funds allocated to him by WorkForce. The ALJ found that WorkForce had no record as to whether any of the funds put onto the debit card had been spent, and Mr. Huffman denied receiving the funds. Further, the ALJ found that unused funds put on a debit card that was not activated were sent out in check form if the funds

were not used. However, based upon the testimony of the parties, no checks were sent to or received by Mr. Huffman. WorkForce did not provide further information as to whether any direct deposits were made to Mr. Huffman, who argues that he only received $2,400 in benefits, while WorkForce asserts that he owes several thousand dollars more in overpayments. Based upon the conflicting evidence in the record, we find that there was insufficient evidence to make a determination as to the exact amount of PUA benefits paid to Mr. Huffman.

Regarding the issue of the alleged overpayments, this Court notes that the Board did not consider Governor Justice's Executive Order Nos. 4-20, which established certain PUA benefits due to the COVID-19 pandemic, and 11-21, which precludes WorkForce from collecting PUA overpayments in the absence of fraud. Executive Order 11-21 states, in part:

> The provisions of Chapter 21A, Article 10, Section 21 of the Code of West Virginia requiring the commissioner of WorkForce West Virginia to collect non-fraudulent unemployment overpayments shall be suspended, provided: (a) The overpayment was received without fault on the part of the claimant; and (b) Recoupment of the overpayment would be against equity and good conscience.

Regardless of Mr. Huffman's initial eligibility for PUA benefits, based on the Board's decision it does not appear that it considered Executive Order 11-21 in its analysis as to whether he should be required to repay the PUA benefits.[3] Thus, we find that the Board erred in failing to consider Governor Justice's Executive Orders.

Accordingly, we affirm the Board's finding that Mr. Huffman was initially ineligible for benefits because he was not separated from employment due to the pandemic. However, we reverse and remand for further consideration as to whether Governor Justice's Executive Orders preclude WorkForce from collecting the alleged overpayments of PUA benefits, and to the extent necessary, further factual findings as to the sum of the PUA benefits that Mr. Huffman actually received.

Affirmed in part, Reversed, in part and Remanded.

---

[3] We have remanded similar matters involving overpayments for consideration of Executive Order 11-21. *See Workforce W. Va. v. Jonese*, No. 22-ICA-131, 2023 WL 5695915, at \*4 (W. Va. Ct. App. Sept. 5, 2023) (memorandum decision); *Workforce W. Va. v. Kirker*, No. 22-ICA-125, 2023 WL 5696097, at \*4 (W. Va. Ct. App. Sept. 5, 2023) (memorandum decision); *Fields v. Charleston Area Med. Ctr.*, No. 22-ICA-266, 2023 WL 6290652, at \*3 (W. Va. Ct. App. Sept. 26, 2023) (memorandum decision).

**ISSUED:**  March 25, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear